## ROBINSON *vs.* DRUMMOND.

1. Although the several counts in a declaration should be considered, on demurrer, as separate and distinct, yet, where one expressly refers to another, the latter, although abandoned, may be looked to in aid of the former.

2. In an action of slander for words spoken charging plaintiff with the crime of arson, the words laid were: "I next morning saw a track going to, and returning from the house. The toes turned in; and I know of but one man who owes me enmity enough to do such a thing, and you know whom I mean, B. D." (plaintiff): *Held*, that the words were not, of themselves, actionable; and, as there was no averment of any matter of fact tending to identify the plaintiff as the person who made the tracks, the count was demurrable.

3. When justification and the general issue are pleaded to an action of slander, if defendant fails to establish the former plea, it may be considered by the jury in aggravation of damages.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. NAT. COOK.

This was an action of slander, brought by Benjamin J. Drummond against Raymond Robinson. The declaration contained two counts, to each of which there was a demurrer. The demurrers were overruled, but the plaintiff afterwards abandoned his first count. The defendant pleaded not guilty and justification. The facts are particularly noted in the opinion.

BELSER & RICE, and WATTS, JUDGE & JACKSON, for appellant:

1. If the words set forth in a count in slander are not actionable *per se*, an innuendo that by the speaking of such words the defendant meant to impute some felony to the plaintiff, will

not help the count. Such count is defective, without an averment that the words were spoken with intent to charge a crime. —Andrews v. Woodmansee, 15 Wend. R. 232; Gibson v. Williams, 4 Wend. R. 321; Rundell v. Butler, 7 Barb. Sup. Ct. Rep. 260; Dorland v. Patterson, 23 Wend. Rep. 422; Sasser v. Rouse, 13 Iredell's Law Rep. 142.

2. If the words are not actionable *per se*, they will not support an action of slander, unless two things are averred and proved: 1st, that defendant meant thereby to impute a felony or crime; 2d, that those who heard the words spoken, understood them to convey such slanderous imputation. The reason for this is, that both malice and damages must concur, in order to give a ground of action.

3. Where a statute gives the right to defendant to plead as many pleas as he deems necessary to his defence, the exercise of that legal right cannot constitute a legal ground for increasing the plaintiff's damages. Whatever may have been the common law, in a case where the plea of justification only was pleaded, can make no difference, in a case arising under our statute.—Montgomery v. Richardson, 5 Carr. & Payne 247: Firmin v. Crucifix, 5 Carr. & Payne 97. These cases show, that the rule which applies where there is only one issue, has no application where there are several. If it be conceded that, at common law, the charge of the court was correct, our statute changes the common law in this respect. It would be strange to hold that where a statute gives the defendant a right, the exercise of that right should increase his liability.—Swails v. Butcher, 2 Carter's (Indiana) Rep. 84; Wright v. Lindsay, 20 Ala. Rep. 428.

4. One of several pleas cannot be "given in evidence" by the plaintiff.—Harrington v. Macmorris, 5 Taunton's Rep. 233; Wright v. Lindsay, 19 Ala. Rep. 428. In the assessment of damages, as well as in finding the facts, the jury are confined by their oath, and by the law, to the matters which are "given in evidence." If one of several pleas cannot be "given in evidence" by the plaintiff, the jury cannot consider it in mitigation, or in aggravation of damages.—Montgomery v. Richardson, 5 Carr. & Payne 247; Firmin & Crucifix, 5 Carr. & Payne 97.

5. The charge cannot be supported; for it left the jury no discretion; it declared as matter of law, that they "must"

consider the plea of justification, and the failure to prove it, in aggravation of damages. This never was the rule, and never ought to be ; for cases can easily be imagined, where the failure to sustain such plea by proof, could not justly be taken as aggravation.

6. The general rule excludes the opinion of witnesses. The opinions allowed as evidence in this case, do not fall within any exception to the general rule.—Sasser v. Rouse, 13 Iredell's Law Rep. 142.

7. The opinion of the witness as to how he understood the words, was irrelevant; for there is no averment that any person understood the words in any particular sense.—Before proof on that point could be admitted, it was essential that there should have been an averment to which it could apply.

The case of Jackson v. Stetson *et ux.*, 15 Mass. Rep. 43, is pronounced by Judge Woodbury " contrary to immemorial practice, as well as authority."—Cilley v. Jenness, 2 New Hamp. Rep. 89, 90.

ELMORE & YANCEY, *contra :*

1. The demurrer was properly overruled ; because the words spoken contained an allusion to the averment of the felonious burning of the house, a statement that he had examined the tracks going to and fro, and that there was but one man inimical enough to do such a thing, viz . Drummond. The previous averment is, that he spoke these words " of and concerning the plaintiff." The case cited from 23d Wendell sustains this declaration ; the first count sustained in that case is the only one analogous to this declaration. Reference may be made in a declaration to a previous count, which has been held bad on demurrer, for dates, and, by parity of reasoning, to averments and inducements.—Mardis v. Shackelford, 6 Ala. 433 ; Morrison v. Spears, 8 *ib.* 93.

2. If words are ambiguous, or doubtful in meaning, or in their applicability, plaintiff has a right, in an action of slander, to inquire how the bystanders understood them.—2 Stark. on Slander, m. p. 51 ; 2 Sup. U. S. Digest, p. 326, § 229 ; 15 Vermont 245 ; Morgan v. Livingston, 2 Richardson 582.

3. A plea of justification in slander, if not sustained, is an aggravation of the slander.—Lea v. Robertson, 1 Stewart 138 ;

Nelson v. Nations, 5 Yerger 211; Jackson v. Stetson, 15 Mass. 48. The case in 2d Carter, cited by defendant, contains no reason for the opinion; it is doubtless based on the opinion, that, if the testimony under the plea of justification fails to establish it, it may yet be looked to in mitigation.—See, also, U. S. Digest for 1850, p. 310, § 92; Shelton v. Simmons, 12 Ala. 466. The statute which allows a defendant to plead as many pleas as he may deem " necessary to his defence," is like any other law of privilege; it must be exercised with reference to the rights of others; as, the law of speech, of writing and publishing, of carrying arms, &c. It is not " the exercise of that legal right," but its abuse, which is made a " legal ground for increasing plaintiff's damages;" the failure to prove the plea, shows that it was not necessary to defendant's defence. Our statute does not take away the common law liability as to such a plea; the extension of privileges cannot be argued as an exemption from the consequences of a malicious act. The plea of justification was not offered in evidence under the general issue. The slander was proved; and the charge was, that, if proved, the failure to sustain the plea of justification was an aggravation.

The case of Jackson v. Stetson, *supra*, has never been pronounced by Judge Woodbury "to be contrary to immemorial practice, as well as authority;" on the contrary, in the case cited in 2 New Hamp. 89, he decides, that where a creditor, in one count of his declaration, admits certain articles to have been returned, he cannot recover for those articles.

CHILTON, C. J.—The declaration contains two counts, to each of which there was a demurrer, but they were held sufficient. Afterwards, the plaintiff below abandoned the first count, so that if there was error in overruling the demurrer to it, no injury has resulted to the defendant by reason of such error.

We shall first address ourselves to the questions presented in argument upon the sufficiency of the second count.

It is insisted on the part of the plaintiff in the appeal, that this count is bad, because the words charged are not actionable in themselves, and there is no averment that they were spoken with intent to charge a crime.

We should observe that, in considering this count, it should not be regarded as isolated from the first count in the declaration, although that was abandoned ; but so far as that count is referred to in this, it should be looked to as aiding it.   The several counts of a declaration are regarded as its several parts, or sections ; and it is not only permissible, but often very proper, to avoid unnecessary repetition and prolixity, that one should refer to another.   If, however, there is not an express reference, the several counts are considered as distinct as if contained in separate declarations.—1 Saund. on Pl. & Ev. 417 ; Mardis' Adm'r v. Shackelford, 6 Ala. R. 436, and cases cited.

The first count avers, by way of inducement, that one Raymond Robinson, before the speaking of the words, was the owner of a dwelling house, which had been feloniously set fire to, and burned down in the night time ; that the plaintiff, before that time, had never been suspected of the crime of arson, &c., but the defendant, maliciously intending to injure him, and to cause it to be suspected and believed that he had been, and was, guilty of arson, and to subject him to the pains and penalties provided by the laws of this State against persons guilty thereof, heretofore, to-wit : on, &c., spoke and published, &c.

The second count, referring to the first, avers, that on the day and year aforesaid, at, &c., aforesaid, the said defendant, in a certain other discourse, which he then and there had, of and concerning the said plaintiff, and of and concerning the said burning of the said house, and further contriving and intending as aforesaid, in the presence and hearing of said last mentioned citizens, falsely and maliciously spoke and published, of and concerning the said plaintiff, and of and concerning the said burning of said house, the false, scandalous, malicious and defamatory words following, that is to say : " I (meaning thereby the said defendant) next morning noticed a track going to and from the house.   The toes turned in ; and I (meaning said defendant) know of but one man who owes me enmity enough to do such a thing, (meaning thereby the felonious burning of the house aforesaid,) and you (meaning one of the said last mentioned citizens) know whom I (meaning said defendant) mean, Ben Drummond ;" thereby, then and there, meaning and intending to charge said plaintiff with having feloniously set fire

to, and burned in the night time, the inhabited dwelling house of said defendant. By means whereof, &c.

We have thus carefully extracted so much of the two counts as must be taken together, in order that we might the more accurately determine whether they contain sufficient averments to authorize the inference of the imputation of a crime.

The general rule, in slander, requires that the words should be taken in their ordinary acceptation; and to enable the court to determine whether, when so considered, they impute a crime, the words must be set out, at least substantially, in the declaration.

Yet, as the vilest slanders may be perpetrated by words, which, in themselves considered, may appear harmless, but which, if taken in connection with surrounding facts and circumstances, may impute the commission of crime, certain exceptions have been engrafted upon the general rule, which may be thus stated:

1. Where the words, in their ordinary acceptation, do not impute a slanderous charge, *but are susceptible of such a meaning*, and the plaintiff avers certain facts with which they stand connected, or to which they relate, and from which it may reasonably be inferred that they were not used in their ordinary sense, but as imputing a crime, upon proof of such averment, it is to be left to the jury to decide whether the words were used in the sense imputed to them. To say of A, "he is the man who took B's horse," implies no charge of a crime, for he may have taken him very innocently by the owner's consent; but if it be averred that B's horse had been feloniously stolen from him, and in a conversation in reference to said larceny, and as to the person who committed it, these words were spoken, then, on proof of such averment, it is for the jury to determine whether the word " took " was not used as a synonyme for " stole," and was not intended to impute to the plaintiff the commission of a larceny.

2. The second exception is, where the charge is made by the use of some cant phrase, nick-name, or words having a local meaning, or by ironical expressions, in all cases, where the defendant, taking advantage of some knowledge which the hearers possess, and which will enable them fully to interpret and comprehend his meaning as imputing a slanderous charge, yet clothes

the charge in such language, as, taken in its ordinary sense, would appear harmless, and impute no crime, the plaintiff may recover, by averring and proving the meaning of such phrases, or words of local signification, or that the words were ironically used, and were employed to convey, and did convey to the hearers, the imputation of a certain crime, or by averring the knowledge of the hearers with respect to some collateral fact, which enabled them to understand the meaning, and to affix the slanderous import. In such cases, however, as fall within this exception, it must be averred that the defendant meant to impute the slanderous charge by the use of the words, and " that they were so understood by the persons to whom they were addressed."—Sasser v. Rouse, 13 Ired. Law Rep. 145, where it is correctly said, these averments are traversable, and must be proven; and that this is the only case where the wit-ness is allowed to give his understanding of the meaning of the words, because the averment could be proved in no other way. Mr. Starkie, we are aware, lays down a different rule, as to the examination of witnesses to prove their understanding, and does not confine such proof to cases of this kind; but he is not sus-tained, either upon principle, or the authority of adjudged cases; for, if witnesses were in all cases allowed to depose as to the sense in which they understood the words, no one would be secure against slander suits, who should speak in the pres-ence of ignorant, prejudiced or corrupt persons, however inof-fensive his language might be in its ordinary signification.—13 Iredell's Law Rep., 145, 146 ; 11 *ib.* 358.

3. The third exception is, where the words impute a slan-derous charge in their ordinary sense, but the defendant proves a fact from which an inference may be drawn that they were not used in that sense, he may insist upon having the jury pass upon the intent.

Applying these rules to the case before us, it is clear that it is not brought within either of the exceptions above laid down. There is no averment, from which an inference may be drawn that the words are used in any other than their ordinary sense. The question, then, arises, on the demurrer, whether, when thus construed, they impute a charge of a criminal offence. Omitting the innuendoes, which only serve to explain, but cannot enlarge the sense, the words are, " I next morning saw a track going

Robinson v. Drummond.

to, and returning from the house. The toes turned in; and I know of but one man who owes me enmity enough to do such a thing, and you know whom I mean, Ben Drummond." It is not stated, or intimated, that the track was that of the plaintiff. There is no averment that there was an attempt to describe the plaintiff, or to identify him as the person making the track, and consequently as the person who set fire to the dwelling, by stating that, from any peculiarity of his walk or conformation, he would likely have made such track, and thus to single him out as the guilty agent, by the expression " the toes turned in."

The latter clause of the sentence clearly involves no slanderous charge.; it merely amounts to an assertion that the defendant knew of but one man who owed him enmity enough to do such a thing, and that was the plaintiff. If, however, there had been an averment of some matter of fact tending to identify the plaintiff as the person making the track, aided by the fact that his enmity towards the defendant furnished a motive for doing the act, the cause then should properly have gone to the jury, to determine whether such words, coupled with such averment, do not impute a criminal charge. As the count now stands, unaided by any such averment, we cannot hold, as a matter of law, that it contains an imputation of a crime. The stating of the intent and meaning by way of innuendo, as we have said, does not aid the count, as it does not enlarge the sense of the words.

For the error in overruling the demurrer to the second count, the cause must be reversed and remanded ; but, as there is another question involved which will arise upon a subsequent trial, it is proper now to decide it. The question alluded to is, as to the effect of the plea of justification upon the subject of damages, when that plea is accompanied with the general issue.

The court below was of opinion, that that plea must be looked to, if the defendant had failed to prove it, in aggravation of damage. We are of the same opinion. When the jury have ascertained, upon the general issue, that the defendant maliciously spoke and published the slander as charged, and come to try the question whether the charge was true upon the plea of justification, they see in this plea, if it be false, a re-affirmation of the slander upon the records of the court, by which the defendant has done the plaintiff a new injury. If the evidence

in support of the justification only goes part of the way, and fails to make it good, it is disregarded, as it is unjust to allow a defendant to obtain any advantage by offering to prove more than he can, and this, too, by proof which could only be intro duced under his false plea, and would have been rejected under the general issue. See cases cited by the counsel for defendant in appeal. The statute which authorizes the defendant to plead as many pleas as is necessary to his defence, does not affect this principle.

We need not examine the other questions, as they will not likely again arise.

Judgment reversed, and cause remanded.